IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                              Case Nos.:  5:11cr3/MW/EMT
                                                            5:14cv193/MW/EMT

YAMURA D. HUDSON

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 119).    The Government filed a response (ECF No. 124), and Defendant filed a reply (ECF No. 126).    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.    *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## PROCEDURAL BACKGROUND

On January 18, 2011, Defendant was charged in a five-count indictment with drug and weapons offenses.   The specific charges were:   possession with intent to distribute 500 grams or more of cocaine and twenty-eight grams or more of crack cocaine on a date certain in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii) and 841(b)(1)(B)(ii)(II) ("Count One"); possession of firearms in furtherance of the drug trafficking crime charged in Count One in violation of 18 U.S.C. § 924(c)(1)(A)(i) ("Count Two"); possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a) ("Count Three"); and two counts of possession with intent to distribute an indeterminate amount of a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) ("Count Four" and "Count Five") (ECF No. 1).   The Government filed a notice of enhancement information indicating its intent to seek enhanced penalties pursuant to 21 U.S.C. §§ 851 and 841(b)(1)(A) due to Defendant's two prior felony drug convictions (ECF No. 28).

Defendant was represented by Federal Public Defender Randolph Murrell. Mr. Murrell filed a motion to suppress evidence that was allegedly seized in violation

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

of the Fourth Amendment (ECF No. 22).   The motion acknowledged that officers had valid arrest warrants to enter the mobile home where Defendant was arrested and arrest him.   Defendant maintained, however, that an additional warrant authorizing them to search for property was lacking in the constitutionally required particularity.   Defendant argued that the officers did not have the authority to search throughout Defendant's mobile home for incriminating evidence at the time of his arrest and use the items that were discovered during this search as the basis for a later search warrant.   Defendant further argued that during law enforcement's execution of the later search warrant, their seizures exceeded the scope of the warrant to such a degree that all items seized during that search should be suppressed (ECF No. 22).   The Government responded in opposition and, in pertinent part, emphasized that no items had been seized at the time of Defendant's arrest; it also argued that Defendant lacked standing to challenge the warrants (ECF No. 35).

Defendant filed a supplemental motion to suppress in which he asked the court to suppress photographs taken from his cell phone and argued that the photos could not be used to justify the seizure of jewelry at the time of his arrest (ECF No. 41). The Government filed another response in opposition (ECF No. 42).   Then- District

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

Judge Richard Smoak denied both motions on March 17, 2011, after a hearing (ECF Nos. 44, 45).

Defendant entered a blind plea of guilty after jury selection concluded (ECF No. 65 at 2).    The Government recited the elements of the offenses and the potential penalties for the record (*id*. at 3–4, 11–12).    Defendant indicated that he was entering the plea while reserving the right to appeal the court's denial of his motions to suppress (ECF No. 60; ECF No. 65 at 10).    In light of the eleventh-hour plea, there was no written statement of facts.    Instead, the Government stated for the record the facts it was prepared to prove if the case proceeded to trial, and Defendant agreed that those facts, if believed by a jury, would support a guilty verdict (ECF No. 65 at 13–19).    Defendant disagreed with the Government's assertion that he was wearing a gun when he sold cocaine to the confidential informant ("CI"), but otherwise he agreed with the Government's proffer (ECF No. 65 at 24).    Defendant indicated his understanding that the Government intended to seek enhanced sentences based upon two prior convictions, which convictions he affirmed (ECF No. 65 at 19–21).    The specific sentence was not mentioned.    Defendant acknowledged that his attorney did not know how the court would apply the

guidelines and statutes in his case and that if the sentence he received was different than what his attorney had predicted, this could not be a basis for withdrawing his guilty plea (ECF No. 65 at 22–23).    Defendant seemed equivocal about whether his questions had been answered and whether he had enough time to talk to counsel but indicated that he just wanted to "go on with it" (ECF No. 65 at 24–25).    Counsel were asked to indicate to the court that there were no promises, assurances, or understandings about the disposition of Defendant's case that were different than what the court had discussed with him, and they both did so (ECF No. 65 at 26).

Nine days after he entered his guilty plea, Defendant filed a pro se letter which was construed as a motion to have Mr. Murrell removed as counsel of record due to ineffectiveness (ECF No. 61).    Mr. Murrell filed a motion in which, on Defendant's behalf, he requested a hearing for the court to consider Defendant's motion (ECF No. 62).    At a hearing held on April 12, 2011, Defendant indicated that he no longer wished to withdraw his plea and wanted to proceed to sentencing with Mr. Murrell as his lawyer (ECF No. 66).

Defendant's Presentence Investigation Report ("PSR") assessed a base offense level of 26 (ECF No. 73, PSR ¶ 22–24).    There were no adjustments, and

his total offense level would have been 26 but for the application of a Chapter Four enhancement, which increased Defendant's total offense level to 37 (ECF No. 73, PSR ¶¶ 32–37).    Defendant had seven criminal history points, but because he was a career offender his criminal history category became VI (ECF No. 73, PSR ¶ 48). The applicable guidelines range was 360 months to life as to Counts One, Four, and Five.    Defendant's sentence on Count Three was limited to 120 months due to the statutory maximum penalty, and Count Two carried a mandatory consecutive term of 60 months (ECF No. 73, PSR ¶¶ 71–75).

At sentencing, defense counsel objected to the lack of credit for acceptance of responsibility, noting that his client had indicated his interest in pleading guilty before jury selection (ECF No. 92 at 3–6).    After some discussion, the court awarded Defendant a two-point adjustment for acceptance of responsibility due to his guilty plea, which reduced the advisory guidelines range to 292 to 365 months imprisonment (ECF No. 92 at 7–9, 17).    Mr. Murrell argued that the court should consider a sentence of 15 years, noting that the offenses that supported the career offender enhancement were minor offenses that occurred 17 and 18 years ago, respectively, when Defendant was a teenager (ECF No. 92 at 10–12).    The court

rejected this argument and sentenced Defendant to a total term of 420-months imprisonment, which was comprised of a 360-month sentence on Counts One, Four and Five; a concurrent term of 120 months on Count Three; and a 60-month term of imprisonment on Count Two to run consecutive to the sentence imposed on Counts One, Four, and Five (ECF No. 78; ECF No. 92 at 15).

Defendant appealed, and the Eleventh Circuit affirmed his conviction in an unpublished opinion (ECF No. 112).[1]   It rejected his contention that the district court had improperly engaged in plea negotiations, and, noting inadequate record development, declined to reach his claim that trial counsel was constitutionally ineffective because of his concession that a general arrest warrant authorized police officers to enter a mobile home to effectuate Defendant's arrest (*id*. at 5–6).

Defendant, through counsel, timely filed the present motion to vacate in August of 2014 (ECF No. 119), in which he raises five grounds for relief.   He contends that trial counsel was constitutionally ineffective because he (1) failed to

---

[1]  The record reflects that Robert A. Harper was substituted for Mr. Murrell (ECF Nos. 80, 81, 86, 89, 90).   Defendant identifies appellate counsel as Devin D. Collier, Esq. of Panama City (ECF No. 119 at 11).   The Eleventh Circuit identifies appellate counsel as D. Gray Thomas of Jacksonville, Florida.   *United States v. Hudson*, 516 F. App'x 879 (11th Cir. 2013).

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

properly challenge a search warrant, (2) failed to file an interlocutory appeal of the denial of the motions to suppress, and (3) failed to properly oppose the Career Offender enhancement.    Fourth, Defendant asserts that his plea was not knowing, voluntary, and intelligent.    And fifth, he claims that appellate counsel was constitutionally ineffective because he did not raise two specific claims on appeal. The Government opposes the motion in its entirety.

## ANALYSIS

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a

complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay*, 657 F.3d at 1195.    An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).    Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).    To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial. *Id.* at 1384–85 (quoting *Hill*, 474 U.S. at 59). A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*,

930 F.2d 832, 835 (11th Cir. 1991)); *Rosin*, 786 F.3d at 873.   A defendant must

"convince the court that a decision to reject the plea bargain would have been rational

under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).   The

Sixth Amendment right to the effective assistance of counsel extends specifically "to

the negotiation and consideration of plea offers that lapse or are rejected." *In re

Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (citing *Missouri v. Frye*, 566 U.S. 133

(2012); *Lafler*, 566 U.S. at 162.   A defendant who claims that ineffective advice

led him to reject a plea offer must show that but for ineffective assistance of counsel,

he would have accepted the plea, and that the conviction or sentence or both under

the terms of the plea offer would have been less severe than under the judgment and

sentence that were imposed.   *Lafler*, 566 U.S. at 163.   A defendant's insistence

that he is innocent is a "relevant consideration" that "makes it more difficult to accept

his claim" that he would have agreed to a plea deal.   *See Osley v. United States*, 751

F.3d 1214, 1224–25 (11th Cir. 2014).   In applying *Strickland*, the court may

dispose of an ineffective assistance claim if a defendant fails to carry his burden on

either of the two prongs.   *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720

F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th

Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon*

*v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."   *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."   *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable."   *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369−70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result

is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A

defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even

affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.   *Lynn*, 365 F.3d at 1239.   Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

Ground One

When counsel's alleged ineffectiveness involves a failure to competently litigate a Fourth Amendment claim, in order to demonstrate actual prejudice, the defendant must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.   *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Green v. Nelson*, 595 F.3d 1245, 1251–52 (11th Cir. 2010).   Regardless of whether a defendant's guilt is established by the excludable evidence, the proper question is whether the outcome of the proceedings would have been different had the motion to suppress been filed and the evidence been excluded.   *Jones v. United States*, 224 F.3d 1251, 1259 (11th Cir. 2000); *Huynh v. King*, 95 F.3d 1052, 1058–59 (11th Cir. 1996); *Thomas v. Newsome*, 821 F.2d 1550, 1552 (11th Cir. 1987); *see also Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).

When challenging the integrity of a warrant under the Fourth Amendment, a defendant must make a substantial showing of a "deliberate falsehood or reckless disregard for the truth," in the affidavit supporting the issuance of the warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (cited in *Green v. Nelson*, 595 F.3d 1245, 1252 (11th Cir. 2010)).   If that standard is met, the affidavit should be examined with the incorrect assertions set aside to determine if the remaining information is sufficient to establish probable cause.   *Franks*, 438 U.S. at 171–72.

As set forth in the PSR and adopted by Defendant in his motion, the charges in this case stem from information provided by CI who advised officers from the Panama City Police Department ("PCPD") that he could purchase cocaine from Defendant Yamura Hudson (ECF No. 73, PSR ¶ 8).   The CI made several recorded calls to an individual he said was Defendant Hudson and arranged by buy an "eight ball" (an eighth of an ounce) of cocaine.   The CI went to 2325 Johnson Avenue, Lot 34, in Panama City ("the Johnson Avenue residence") where he met with Defendant and purchased cocaine on two separate occasions (ECF No. 73, PSR ¶¶ 9, 10).

PCPD Officer Tammy Lainer applied for and received a search warrant for 270 Seneca Avenue in Callaway, Florida ("the Seneca Avenue address")[2] to search for Defendant.   PCPD officers executed the warrant and arrested Defendant at the residence, where they observed in plain view several firearms, a significant amount of cash, and additional items including a box of plastic bags, a digital scale, and a razorblade with white residue (ECF No. 73, PSR ¶ 14).   Officers secured the residence and obtained a second search warrant for the residence.   The second warrant went beyond the scope of the initial warrant and authorized a search for drugs and firearms (ECF No. 73, PSR ¶ 15).   Pursuant to the second warrant officers seized weapons, ammunition, drugs, cash, five cell phones, and other items associated with drug dealing or distribution (ECF No 73, PSR ¶ 16).

Defendant claims that the initial warrant was invalid.   According to Defendant, the application for the first warrant[3] stated that surveillance had placed

---

[2] Defendant represents that this property is actually 5312 Highway 22, Panama City, Florida, as will be discussed further herein (ECF No. 119 at 14).

[3] Defendant did not append a copy of the warrant or provide a reference to the record. The undersigned, however, located a copy of the challenged application and warrant attached to the Government's Response to Defendant's Motion to Suppress (*see* ECF Nos. 35-2, 35-3).

Defendant inside the residence at the address and that he had not left the address. He contrasts this with the testimony at the suppression hearing, that officers never actually observed him enter the residence (*see* ECF No. 105 at 57, 72).    There is no discrepancy.    In the search warrant application, the affiant appears to use "the residence" to denote the entire property rather than merely the building located thereon (*see, e.g.*, ECF No. 35-2 at 2 (affiant observed Defendant "leave the residence as a passenger in acquaintances [sic] car"); ECF No. 35-2 at 3 (Defendant was observed to "leave the residence at 270 Seneca Avenue in the Gold Caprice as the driver")).    The application states that the affiant has probable cause to believe Hudson is inside the residence . . . to avoid detection by law enforcement" (ECF No. 35-2 at 3).    Defendant's contention that counsel failed to contest "the lack of actual probable cause to execute the arrest warrant at the residence in question" (ECF No. 119 at 15) is without merit, as the law enforcement officers' direct observations supported a finding of probable cause that he was present at the property.

Defendant next contends that Officer Lanier's affidavit claimed that the CI was reliable but "failed to demonstrate the informant's veracity as required by Eleventh Circuit law" (ECF No. 119-1 at 4, 7).    Defendant relies on *United States*

*v. Martin*, 297 F.3d 1308 (11th Cir. 2002) in support of his argument.    The court in

*Martin* cited *Illinois v. Gates*, 462 U.S. 213, 238 (1983), for the proposition that if

an informant is mentioned in the affidavit, the affidavit must demonstrate "the

informant's 'veracity' and 'basis of knowledge.'"    *Martin*, 297 F.3d at 1314.

However, immediately following this reference, the court went on to say that

"[w]hen there is sufficient independent corroboration of an informant's information,

there is no need to establish the veracity of the informant."    *Id.* (quoting *United*

*States v. Denhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

  In the case at bar, unlike in *Martin,* the object of the challenged warrant was

a person, not evidence of a crime.    Furthermore, the information from the CI is best

characterized as "corroborating" information that law enforcement had obtained

through surveillance, and was merely tangential to the goal of ascertaining

Defendant's location and arrest (as previously noted, law enforcement ascertained

Defendant's location through surveillance and personal observation).    As set forth

in the application, law enforcement had observed Defendant travel to and from the

Seneca Avenue address in both a gold Caprice that he was known to drive and as a

passenger in a white Stratus with a live-in acquaintance, Carol Fenn, to whom both

vehicles were registered.    During one departure from the property in the Caprice, Defendant was observed using "counter surveillance maneuvers." Law enforcement broke off surveillance, and an investigator who remained at the property observed the Caprice, driven by Defendant, return to the residence and remain there. Information provided by the CI corroborated that Carol Fenn, the owner of the two vehicles, was a "live-in acquaintance" and that Defendant believed he was being monitored by law enforcement.    It also supported law enforcement's suspicion that Defendant had a new residence, a fact that was not highly, if at all, relevant to the issuance of the arrest warrant.    The CI's statement that Defendant carried a handgun at all times was not central to the issuance of the arrest warrant.    As such, Officer Lanier's failure to demonstrate the informant's veracity and basis of knowledge was not fatal to the issuance of the search warrant authorizing the entry into the Seneca Residence property to secure Defendant's arrest.

Defendant also asserts that Officer Lanier failed to state that she made a reasonable effort to determine if the residence in question was actually that of Defendant, and that she improperly relied upon her own suspicion and belief as to the reason Defendant was staying there (ECF No. 119-1 at 4).    Neither the

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

"ownership" of the residence where Defendant was located nor the reason for his presence affected the constitutional validity of the warrant.    Defendant also suggests that officers acted with nefarious motives in securing the warrant rather than waiting to arrest him during a random encounter or at his known Johnson Avenue residence.   He states that "the officers appeared to have wanted an opportunity to go into the residence described as 270 Seneca so they could try and find evidence of a crime, which was nothing more than an impermissible 'fishing expedition'" (ECF No. 119-1 at 6).    The warrant was constitutionally valid, regardless of the officers' motives in choosing to execute it at a particular location.

Defendant next asserts that trial counsel should have moved to suppress the search of the residence because the warrant failed to state the correct address.    This argument appears to have two parts.    First, Defendant appears to contend that the application for the warrant should have requested permission to search the address known by the affiant to be Hudson's "current address," i.e., the address of the Johnson Avenue residence.    As noted above, the warrant was seeking recovery of the Defendant's person, not fruits of the crime.    Therefore, the fact that the controlled buys took place elsewhere is not relevant.

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

Second, Defendant contends that Officer Lanier incorrectly identified the residence to be searched as 270 Seneca Avenue in Callaway, Florida, when in fact the residence entered was located at 5312 Highway 22, Panama City, Florida. Officer Lanier testified at the suppression hearing that 270 Seneca also was known by the address of 5312 East Highway 22 (ECF No. 105 at 19).   This fact does not negate or render inaccurate the application's use of the Seneca Avenue address, which also included a complete description of how to locate the address (ECF No. 35-2 at 4).   Defendant offers no additional argument or explanation about how Officer Lanier's citation to one of two means of identifying a particular property rendered the warrant constitutionally deficient.

In sum, Defendant's assertion that counsel was constitutionally ineffective for failing to challenge the validity of the initial search warrant of the Seneca Address is without merit, as there was no viable basis for doing so.

Defendant also contends that counsel failed to capitalize on the fact that "the police lied about when they searched the phones found during the initial search," at which point they were only supposed to be looking for his person per the arrest warrant (ECF No. 119 at 15).   He contrasts the statement in his affidavit that he

told counsel before the suppression proceedings that police had searched the mobile phones during the first search (ECF No. 119 at 18, Exh. A), with the Government's claim that law enforcement searched only one of the phones while executing the second search warrant and later obtained a search warrant for each of the five phones seized from the Seneca Avenue residence without relying on any previous search. (ECF No. 42 at 2, 3).    The Government notes that the photographs in the cell phones were obtained pursuant to federal search warrants that made no reference to the earlier search, and thus they were untainted and the photographs contained therein were admissible.    As such, counsel was not constitutionally ineffective for failing to pursue this issue.

Ground Two

In his second ground for relief, Defendant contends that trial counsel was constitutionally ineffective because he failed to file an interlocutory appeal from the district court's denial of the motions to suppress.    He asserts that counsel failed to inform him that he could have appealed the denial of the suppression motions prior to trial, and, if successful, he would only have had two substantially lesser charges remaining (ECF No. 119 at 16).    Defendant claims that he was prejudiced as he

was "forced . . . to enter into a plea that he otherwise would not have entered into had his suppression motions been appealed and ultimately granted" (ECF No. 126 at 4).

A defendant may not take an interlocutory appeal from an order denying a motion to suppress evidence.   *Di Bella v. United States*, 369 U.S. 121, 123–24 (1962) (citing *Carroll v. United States*, 354 U.S. 394 (1957) and *Cogen v. United States*, 278 U.S. 221 (1929)).   Defendant asserts in his reply that the Supreme Court recognized in *Di Bella* that Congress has recognized exceptions for "interlocutory orders in certain types of proceedings where the damage of error unreviewed before the judgment is definitive and complete."   *Di Bella*, 369 U.S. at 124–25.   The cited exceptions are to statutory provisions authorizing such interlocutory appeals and are not relevant here.   The *Di Bella* Court expressly noted that "[o]rders granting or denying suppression in the wake of [grand jury] proceedings are truly interlocutory" and that an order on a suppression motion "must be treated as 'but a step in the criminal case preliminary to the trial thereof.'"   *Di Bella*, 369 U.S. at

131 (quoting *Cogen*, 278 U.S. at 227).    Defendant's argument has no basis in law and he is not entitled to relief.[4]

Ground Three

Defendant contends that counsel was constitutionally ineffective because he failed to conduct an adequate investigation into Defendant's criminal history and properly oppose the § 4B1.1 Career Offender enhancement.    Defendant asserts in his affidavit that "[p]rior to sentencing, [he] told [his] attorney that one of the prior offenses they were using as a career offender predicate should not qualify because [he] pled it down to simple possession" and that without conducting an investigation counsel incorrectly advised him that it did not matter (ECF No. 119 at 18). Defendant maintains that, had counsel investigated his criminal history, he would have discovered that Defendant's 1994 charge for Possession of Cocaine with Intent to Distribute was pled down to mere Possession of Cocaine, which was not a qualifying conviction for the § 4B1.1 career offender enhancement.    *See Salinas v.*

---

[4] As noted *supra*, at the time Defendant entered his plea he preserved his right to appeal the denial of the motions to suppress.

*United States*, 547 U.S. 188 (2006).[5]   If this conviction, one of only two used as predicates for the enhancement, were not a proper predicate as Defendant claims, the enhancement would not apply.

In an attempt to prove the nature of his prior conviction, Defendant has submitted a copy of what purports to be a March 9, 1998, judgment from Bay County, Florida (ECF No. 119 at 19–20).   This "judgment" identifies a conviction for "Sale of Cocaine," a second degree felony under Fla. Stat. § 893.13, in Case number 93-331, and "Possession of Cocaine," a third degree felony under § 893.13, in Case number 94-1046 (ECF No. 119 at 19–20).   Careful review of the "judgment" form, and comparison with information contained within the PSR, reflects that this is not the original "judgment" in the two prior cases, but rather a related judgment that was entered years after Defendant's 1994 convictions (i.e., when his probation was subsequently revoked in 1998), and it cannot be relied upon to accurately describe the nature of the prior convictions.

---

[5] Defendant cited *Salinas v. United States*, 522 U.S. 52 (1997), but this case does not discuss the Career Offender enhancement; it thus appears that Defendant intended to cite *Salinas*, 547 U.S. 188, as this case discusses the enhancement.

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

On the top of the judgment form there are spaces to indicate "Probation Violator," "Community Control Violator," "Retrial," and "Resentence" (ECF No. 119 at 19). The line next to "Probation Violator" is marked "xxxxx." The case numbers on the two offenses listed in the chart below, 93-331 and 94-1046, correspond to the case numbers on the offenses identified in Paragraph 32 of Defendant's PSR as supporting the Career Offender enhancement (ECF No. 73, PSR ¶ 32). The individual description of the two offenses in the PSR reveals that on March 9, 1998, the date listed on the judgment provided by Defendant, his probation was revoked in each case (ECF No. 73, PSR ¶¶ 41, 43). Thus, this "judgment," which requires description of the prior convictions in a small space, is not persuasive evidence that that his prior offense for "possession of cocaine with intent to distribute"—of which he was originally convicted in 1994—was actually "pled down." In fact, based on Defendant's past representations to the court, his assertion that the offense was pled down appears perjurious.

In opposing this claim, the Government notes Defendant's admission under oath of the existence and nature of his qualifying convictions. The following exchange occurred at sentencing:

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

THE COURT:    All right.   I now need to ask you about those prior convictions, and I am going to ask you if you admit that these prior convictions are correct.   That you were previously convicted in the Circuit Court, 14th Judicial Circuit for Bay County, Florida of sale of cocaine in Case No. 93-331.    It appears that this was January the --.

MS. LITTLETON:      I believe it was January 20th.

THE COURT:    January 20th, 1994.    Do you admit that prior conviction?

MR. MURRELL:  I was going to say, I'm not sure he knows all the details.

THE COURT:    January 20th, 1994, and it was for the sale of cocaine.

MR. MURRELL:  One is for possession with intent to sell and one was for sale if I remember right.

THE DEFENDANT:      '93, '94

MR. MURRELL:  I think he finally went to court in '94 on both of them.

THE COURT:    The sale of cocaine is one, and then I'm going to ask him about possession of cocaine with intent to distribute and resisting officer without violence.

THE DEFENDANT:      The sale was in '93 and that was in '94.

THE COURT:     The case that I just talked about was a case that was filed in '93.   It was 93-331.   And you were apparently found guilty on January 20th, 1994.   Do you admit that prior conviction?

THE DEFENDANT:     Yes, yes.

THE COURT:     Next is the case of 94-1046, again in Bay County Circuit Court, 14th Judicial Circuit.   And the first count was possession of cocaine with intent to distribute and the second count was resisting an officer without violence, and that you were found guilty on September 1st, 1994.   Do you admit that?

THE DEFENDANT:     Yes.

THE COURT:     Now, let me go back to the sentences.   And you understand that by admitting these prior convictions, you may be subject to an enhanced sentence.   Do you understand that?

THE DEFENDANT:     Yes.

(ECF No. 65 at 20–22).

Particularly in light of the foregoing, Defendant's submission of the judgment reflecting his adjudication of guilt for violating his probation offers nothing to

support his claim.   He has not established that counsel was constitutionally ineffective, and he is not entitled to relief on this ground.

Ground Four

Defendant next claims that his plea was not voluntary, intelligent, and knowing.   The basis for his assertion is counsel's alleged promise that he would be sentenced to a term of only fifteen years and still have the opportunity to appeal the court's denial of his motions to suppress.   Defendant again claims that counsel failed to advise him that he could have appealed the adverse ruling on the suppression motions prior to trial—which advice, as explained above, would have been erroneous.

Defendant's sworn assertion that he believed he would receive a sentence no greater than the fifteen years allegedly promised by trial counsel is contradicted by the transcript of the plea proceeding.   The court inquired whether Defendant had talked to counsel about how the sentencing guidelines and sentencing statutes might apply to his case, after which the following exchange took place:

THE COURT:        And do you understand that under certain circumstances, judges have discretion to impose sentences which may be greater or less than that called for by the sentencing guidelines and the statutes?

THE DEFENDANT:        Yes, he told me that part.

THE COURT:        And do you understand that neither the public defender nor the U.S. Attorney knows how I may interpret and apply the guidelines and statutes in your case.    Do you understand that?

THE DEFENDANT:        Yes, he told me that.

THE COURT:        So if my sentence turns out to be different than what your attorneys have predicted, do you understand you cannot take back your guilty plea; it is a final decision today?

THE DEFENDANT:        Yes.

(ECF No. 65 at 22–23).    Mr. Murrell also assured the court that Defendant's plea was freely and voluntarily made, and that no promises, assurances, or understandings had been given to him about the disposition of his case that were any different than what had been discussed with him as a matter of record (*id*. at 26).

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

Defendant now states in his affidavit that "[c]ounsel further explained during the plea colloquy that regardless of what the court said about not being bound by any particular sentence, that if I just went along I would not receive a sentence any greater than 15 years" (ECF No. 119).   In light of the record before it, the court does not afford this self-serving statement any probative weight.   A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings.   *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin*, 767 F.3d at 1210 (citing *Blackledge*).   This is because solemn declarations made under oath in open court carry a strong presumption of verity.   *Blackledge*, 431 U.S. at 73–74; *Connolly v. United States*, 568 F. App'x 770, 771 (11th Cir. 2014) (citing *Blackledge*); *Garces v. United States Att'y Gen.*, 611 F.3d 1337, 1349 (11th Cir. 2010) (citing *Blackledge*).   They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin*, 767 F.3d at 1216.   In fact, such allegations are subject to summary dismissal.   *Winthrop-Redin*, 767 F.3d at 1216

(citing *Blackledge*, 431 U.S. at 74).   A defendant "bears a heavy burden to show his statements [under oath] were false."   *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *United States v. Green*, 275 F. App'x 941 (11th Cir. 2008); *United States v. Cardenas*, 230 F. App'x. 933 (11th Cir. 2007).   Defendant has not met that burden in this case.   Although the sentencing outcome was not what he had hoped, Defendant has not shown that his plea was anything other than voluntary, and he is not entitled to relief.

Ground Five

Last, Defendant contends that appellate counsel was constitutionally ineffective.   He asserts that counsel should have argued that the district court erred in denying the motions to suppress and in sentencing him as a career offender. He also contends that counsel failed to file a petition for a writ of certiorari with the Supreme Court.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment,

decides not to do so.    *Smith v. Robbins*, 528 U.S. 259, 287–88 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 126–27 (2009); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991).    It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.    *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*).    "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."    *Barnes,* 463 U.S. at 751–52.    In fact, this is the "hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).    The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.    *Id*.; *Heath*, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its

entirety); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*).

To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal. *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see also Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).    Counsel is not ineffective for failing to raise a meritless issue on appeal. *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

The undersigned has reviewed the transcript of the suppression hearing held before Judge Smoak (ECF No. 105).    Defense counsel argued at the hearing that the initial search warrant purportedly authorizing officers to enter the Seneca residence to arrest Defendant was a "badly written document," a fact that cannot be reasonably disputed (ECF No. 105 at 115).    Mr. Murrell noted that this was not

dispositive because the arrest warrants alone were sufficient to allow agents to enter the mobile home to arrest Defendant (*id.*).   He argued that officers had searched beyond the scope of the warrant, i.e., through drawers and cabinets, although he admitted that he had not secured any testimony to that effect (ECF No. 105 at 115–16).   The primary defense position was that officers exceeded the scope of the second warrant by taking items such as a television, a computer, and tire rims when there was no basis to believe that they had something to do with a controlled substance offense (ECF No. 105 at 116–17).   Counsel argued that because the officers' search was so broad and they seized so many items, it invalidated the entire search (ECF No. 105 at 117–18).   The defense also claimed that the search warrants that were ultimately issued for the cell phones were invalid because there was insufficient information provided to support the inference that the cell phones were used in Defendant's illicit activity (ECF No. 105 at 120–22).

In response, the Government noted that the search warrant specifically authorized the seizure of the computer and cell phones, and that items of unexplained wealth can be probative of a defendant's drug trafficking activities, particularly where, as here, Defendant had never been observed at a legitimate place of

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

employment (ECF No. 105 at 124–25, citing *United States v. Terzado-Madruga*, 897 F.2d 1099 (11th Cir. 1990)). The Government also likened the search of the cell phones for photographs to a search of a "closed container" (ECF No. 105 at 125, citing *United States v. Jackson*, 120 F.3d 1226 (11th Cir. 1997)). The Government further noted that once the case became federal, the Government had sought warrants for each of the five cell phones without using any information related to officers looking at one of the phones on-site, and as such the federal search warrants were untainted (ECF No. 105 at 130). The court concluded that the federal warrants were proper and "not tainted by whatever might have been done with the state warrants" and denied the motions to suppress (ECF No. 105 at 133, 137).

Defendant has not suggested a basis for overturning the denial of the motions to suppress, other than his disagreement with the court's rulings. This is insufficient to establish that counsel was constitutionally ineffective for his failure to include this issue on appeal. As discussed above, his claim that the career offender enhancement was improperly applied to him was without merit, and counsel cannot be ineffective for failing to it. *Shere*, 537 F.3d at 1311; *Ladd*, 864 F.2d at 110. Finally, with respect to his claim that counsel was constitutionally

ineffective for his failure to file a petition for a writ of certiorari, Defendant has neither suggested that he requested that such a petition be filed nor established that he has a constitutional right to have appointed counsel file a discretionary petition. *See Flores-Cruz v. United States*, Nos. 1:11-CR-203-OPE-GGB, 1:12-CV-4200-ODE-GGB, 2013 WL 5282440, at *8 (N.D. Ga. 2013) (finding no such right and citing cases).    As such, he is not entitled to relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 119) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT

At Pensacola, Florida, this <u>24th</u> day of March 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.** <u>**Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**</u> **A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* 11th **Cir. Rule 3-1; 28 U.S.C. § 636**.

Case Nos.: 5:11cr3/MW/EMT; 5:14cv193/MW/EMT